UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES T MCCARTHY,

Petitioner,

v.

CRAIG KOENIG,

Respondent.

Case No.  16-cv-06820-HSG

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the *pro se* amended petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner James T. McCarthy challenging the validity of a judgment obtained against him in state court.  Dkt. No. 34.  For the reasons set forth below, the petition is denied.

**PROCEDURAL HISTORY**

**A.       Conviction and Sentencing**

On November 26, 2012, the Alameda County District Attorney filed an information charging petitioner with fourteen counts: Count one alleged continuous sexual abuse of a child (Cal. Penal Code § 288.5(a)); counts two through twelve alleged aggravated sexual assault of a child (Cal. Penal Code § 269(a)(4), (5)); count thirteen alleged forcible oral copulation (Cal. Penal Code § 288a(c)(2)(A)); and count fourteen alleged forcible rape (Cal. Penal Code § 261(a)(2)).  Answer, Ex. 1 ("CT") at 61-77. [1]  On February 13, 2013, the trial court granted the prosecutor's motion to dismiss count two. CT 164; Answer, Ex. 2 ("RT") at 704.

On February 15, 2013, the jury found petitioner guilty of all the remaining counts.  CT

_____

[1] The Answer is docketed at Dkt. No. 11.

United States District Court
Northern District of California

264-76, 280-85; RT 961-70.  On March 18, 2013, the trial court sentenced petitioner to an aggregate term of 150 years to life plus 32 years.  CT 326-32; RT 997-1001.

**B.     Post-Conviction Appeals and Collateral Attacks**

Petitioner appealed.  He raised the following issues on appeal: (1) the trial judge engaged in judicial misconduct by interjecting herself into the proceedings; (2) there was insufficient evidence of duress to sustain the convictions; and (3) the trial court erred in denying disclosure of sealed records.  The California Court of Appeal affirmed the judgment of conviction in 2015, and the California Supreme Court denied review three months later.  Answer, Exs. F, J.

Petitioner later filed petitions for writ of habeas corpus in the Alameda County Superior Court, California Court of Appeal, and California Supreme Court in which he raised the following issues: (1) prosecutorial misconduct on multiple grounds; (2) ineffective assistance of trial counsel on multiple grounds; and (3) trial court error in excluding testimony and other evidence.  Dkt. No. 1 at 10-26, Dkt. No. 1-1 at 1-34, Dkt. No. 1-2 at 5-9.  The superior court denied the petition as untimely and for failure to state a prima facie case for relief.  Answer, Ex. K.

The California Court of Appeal denied all three of petitioner's state habeas claims as untimely and for failure to sufficiently set forth his claims.  *See* Answer, Ex. L, citing *In re Clark*, 5 Cal. 4th 750, 782-99 (1993) (timeliness); *In re Robbins*, 18 Cal. 4th 770, 780 (1998) (timeliness); *In re Swain*, 34 Cal. 2d 300, 303-04 (1949) (insufficient pleading of claim).  It also specifically held that Claim 1 was barred by *In re Dixon*, 41 Cal. 2d 756, 759 (1953) (failure to raise claim on direct appeal) and *In re Seaton*, 34 Cal. 4th 193, 199-200 (2004) (forfeiture for failing to object at trial).  *See* Answer, Ex. L.  The court held that portions of Claim 3 that were not argued on appeal were barred by *Dixon* and that portions of Claim 3 that were argued on appeal were barred by *In re Waltreus*, 62 Cal. 2d 218, 225 (1965) (issue rejected on appeal cannot be renewed on habeas).  *See* Answer, Ex. L.

Finally, the California Supreme Court denied petitioner's claims.  Like the California Court of Appeal, the California Supreme Court cited *Dixon*, *Swain*, and *Waltreus* in its denial.  Answer, Ex. M.  It also cited *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), which, like *Swain*, is a dismissal for failure to state a claim with particularity and to support it with documentary

evidence.  *Id.*

## C.    Federal Court Proceedings

On November 28, 2016, petitioner filed the instant action, raising the following six claims for relief: (1) prosecutorial misconduct on multiple grounds; (2) ineffective assistance of trial counsel on multiple grounds; (3) trial court error in excluding testimony and other evidence; (4) judicial bias; (5) insufficient evidence to support his convictions; and (6) trial court error in denying disclosure of sealed records.  On January 4, 2017, the Court issued an Order to Show Cause.  Dkt. No. 6.  On January 23, 2017, petitioner filed a supplemental brief with leave of court. Dkt. No. 8.  Respondent filed an answer on March 28, 2017.  Dkt. No. 11.  Petitioner filed a traverse on April 24, 2017.  Dkt. No. 12.  Although respondent's answer addressed the merits of the claim, respondent also argued that Claims 1 and 3 were procedurally barred and unexhausted and that Claim 2 was unexhausted.  *Id.*

On December 1, 2017, the Court dismissed Claim 1 as procedurally barred and dismissed Claims 2 and 3 as unexhausted.  Dkt. No. 15.  The Court directed petitioner to elect how he wished to deal with the unexhausted claims.  *Id.*  On April 25, 2018, the Court denied petitioner's motion for reconsideration and again directed petitioner to elect how he wished to deal with the unexhausted claims.  Dkt. No. 20.  On September 25, 2018, the Court granted petitioner's motion for a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).  Dkt. No. 26.  The Court stayed the petition and administratively closed the case while petitioner returned to state court to exhaust state remedies on Claims 2 and 3.  *Id.*  On September 19, 2018, the California Supreme Court denied the new petition, citing *In re Miller,* 17 Cal.2d 734, 735 (1941), which bars repetitious presentation in California state court of claims already presented in an earlier petition. *See* Dkt. No. 35 at 4.  On October 1, 2018, petitioner alerted the Court that he had exhausted all claims in the California Supreme Court.  Dkt. No. 27.  On October 31, 2018, the Court granted petitioner's motion to reopen the action and directed petitioner to file an amended petition.  Dkt. No. 33.

Petitioner filed an amended petition on November 20, 2018.  Dkt. No. 34.  The amended petition omits Claim 1, which as noted above, had been dismissed.  The amended petition includes

the newly exhausted Claims 2 and 3 without material change, as well as Claims 4, 5 and 6 without

material change.  On November 29, 2018, respondent notified the Court that he intended to submit

the matter based on his already filed answer.  Dkt. No. 35.  Petitioner has not objected.

Accordingly, the Court deems the matter submitted on the answer, supplemental brief, and

traverse already on file.  Dkt. Nos. 8, 11, 12.

### STATEMENT OF FACTS

The following background facts describing the crime and proceedings at trial are taken

from the April 16, 2015 opinion of the California Court of Appeal:[2]

***Prosecution Evidence***

Doe was 18 years old at trial.  She testified that when she was six years old, appellant, her
adoptive father, showed her his penis and put her hand on it.  She said this happened
multiple times each week.  She would whine and complain that she did not want it to
happen.  When asked why she did it, she responded: "Because he was supposed to be my
dad, and he told me to do it.  If you don't do something your dad tells you to do, usually
you get in trouble for it."  She described her father as a disciplinarian and said that to
discipline her, he would give her a time out, take something away, or sometimes she would
be spanked.  She complied with his requests so she would not be disciplined and because
she was "afraid."  She said appellant told her it was their "little secret" and asked her to
promise not to tell anyone.  She thought if she told anyone, she would get in trouble.

Doe was forced to perform oral sex on appellant more than once a week from the time she
was eight years old until she was 15 years old.  This would sometimes cause her pain
because appellant would pull on her hair.  When Doe was seven years old, appellant
touched her vagina with "[h]is fingers.  Sometimes his mouth."  Doe remembered
appellant inserted his fingers into her vagina when she was 10 years old.  She said she
performed these acts due to "fear" and it was a "matter of safety."  She was afraid to tell
anyone because "I didn't know what [appellant] could have done ...  "I was scared out of
my mind that he would murder my mother if she found out.  I was also worried he would
beat me."

When Doe was 15 years old, she was the victim of a sexual assault by a stranger.  She
began going to therapy but did not tell the therapist about appellant's abuse.  She testified
she could talk about the stranger's assault because there was no fear of consequences, but
she knew if she talked about appellant, the therapist could not keep it confidential.  She
testified she strategized ways to avoid being alone with appellant including locking herself
in the bathroom.

When Doe began a sexual relationship with another 16-year-old, appellant became angry.
Doe's mother testified that appellant "was really, really scary angry.  I mean, I thought he

---

[2] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. McDaniel*,
853 F.3d 1049, 1055 (9th Cir. 2017).  Based on its independent review, the Court finds that it can
reasonably conclude that the state appellate court's summary of facts is supported by the record
and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366
F.3d 992, 999-1000 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d
984, 1000 (9th Cir. 2014), unless otherwise indicated in this order.

United States District Court
Northern District of California

was gonna hurt her." She testified that appellant was so enraged he was "hitting [Doe]." Doe testified appellant expressed his anger by "rap[ing]" her. He came into her room while she was dressing and dropped a red condom on the bed. She knew appellant wanted to have sex with her and she felt afraid. Appellant handed her the open condom to put on his penis and then he had sex with her.

Doe began collecting appellant's ejaculations. After appellant ejaculated in her mouth, she would spit it into a tissue and save the tissue. She collected five tissues in the box and turned them over to the police. She also included a note so "he wouldn't get away with it, even if something had happened to me." She said she had periods where she was suicidal due to the abuse. The Oakland Police Department criminologist conducted a DNA analysis of the five tissues and concluded they contained semen and sperm. Three of tissues also showed the presence of saliva. The criminologist matched the DNA on the tissue to appellant's DNA and found the profile would be expected to occur in 1 in 175 quintillion members of the population. It would be "highly unlikely" that "anyone else on this earth" could have provided the sperm.

Doe made a pretext call to appellant from the Oakland Police Department. In the call, appellant made several incriminating statements. He said, "Oh so you think I'm gonna still try to touch you right?" He said that it would not happen again but he has never "done anything to you, you did not approve of or want." Doe stated they would not have sex again and appellant said, "no" and then she asked appellant if she would have to "touch you or suck you anymore" and he said, "[n]o." He told her he did not want her to be upset about it. She asked him if it ever happened at the first house they lived in and he said no, just at "our house now" because she "had [her] own floor" and "had a lot more freedom here."

### Defense Evidence

Appellant testified he never had Doe touch his penis and he never touched her vagina, other than one instance when she had a rash as a child. He said the only time his daughter ever put her mouth on his penis was when she was 16 years old. He testified that she tried to put her mouth on his penis when she was 14 years old and he told her it was not appropriate. He stated that she would try to touch his penis through her pants or flash her breasts at him to get a reaction. When Doe told him about having sex with her boyfriend, he testified he was calm, but became upset when he realized that she had left her brother alone at the Bart station. He said that he "swatted her on the behind." He hit her three times.

When Doe was 16 years old, she came to him and said she wanted to have sex with him. He said he approached her as she was lying on the bed, but then he walked away and did not have sex with her. On cross-examination, he testified he did not insert his penis into her vagina, but that "[s]he grabbed me in a way that I entered her vagina very briefly." He claimed Doe only put her mouth on his penis one time that day, but on cross-examination, he stated she sucked his penis more than once that day in order to explain his statements during the pretext call.

### Motion for Acquittal and Verdict

At the close of the People's case, appellant moved for acquittal pursuant to Penal Code section 1118.12 based on insufficiency of the evidence. Appellant argued there was insufficient evidence of duress for counts two through thirteen because there was no evidence of actual force or threats. The prosecution argued duress was established by evidence of psychological coercion based upon Doe's age, the disparity in size, and appellant's role as an authority figure. As to counts two, three, and four which alleged Doe was under 10 years old at the time of the assaults, defense counsel argued her testimony

was speculative as to when the incidents of oral copulation occurred, and there was insufficient evidence the acts occurred before age 10. The court dismissed count two after the prosecutor agreed there was an insufficient factual basis as to Doe's age, but found sufficient evidence for counts three and four. The court then denied the motion for judgment of acquittal as to counts three and four finding sufficient evidence to sustain the convictions.

A jury convicted appellant of six counts of aggravated sexual assault of a child by oral copulation (§ 269, subd. (a)(4)), four counts of aggravated sexual assault of a child by sexual penetration (§ 269, subd. (a)(5)), one count of continuous sexual abuse of a child (§ 288.5, subd. (a)), one count of forcible oral copulation (§ 288a, subd. (c)(2)(A)), and one count of forcible rape (§ 261, subd. (a)(2).) The court sentenced appellant to a determinate term of 32 years followed by an indeterminate term of 150 years to life.

*People v. McCarthy*, No. A138682, 2015 WL 1774398, at *1-3 (Cal. Ct. App. Apr. 16, 2015)

(footnote omitted).

## DISCUSSION

### A.    Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it

United States District Court
Northern District of California

6

"confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

Here, as noted, the California Supreme Court denied the two petitions for review on procedural grounds. The California Court of Appeal, in its opinion on direct review, addressed three of the claims petitioner raises in the instant petition. The court of appeal thus was the highest state court to have reviewed those claims in a reasoned decision, and it is the court of appeal's decision that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The remaining two claims were presented only in petitioner's state petitions for writ of habeas corpus, which were denied on procedural grounds. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848,

853 (9th Cir. 2003). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

**B.     Petitioner's Claims**

Petitioner asserts the following grounds for relief in his amended petition: (1) ineffective assistance of trial counsel on multiple grounds; (2) trial court error in excluding testimony and other evidence; (3) judicial bias; (4) insufficient evidence to support his convictions; and (5) trial court error in denying disclosure of sealed records. The Court addresses these claims in turn.

**1.     Ineffective Assistance of Counsel**

Petitioner argues that trial counsel was ineffective because he failed to follow petitioner's suggestions regarding what evidence and story lines to present; because he failed to investigate and secure relevant and probative evidence; because he failed to respond to vindictive charges by the prosecution by presenting Jane Doe's false statement; because he failed to reveal false testimony and previous false statements; because he failed to request in discovery Jane Doe's alleged journal; because he failed to properly cross-examine witnesses; because he failed to object to the prosecution's numerous leading questions, staged testimony, improper remarks, and improper closing argument; and failed to send trial files to plaintiff until November 2016. Dkt. No. 34 at 31 to 39. Because petitioner's IAC claims were denied on procedural grounds, this Court conducts an independent review of the record to determine whether the state court denial was objectively reasonable, keeping in mind that the petitioner has the burden of showing that there was no reasonable basis for the state court to deny relief. *See Harrington*, 562 U.S. at 98.

**A)     Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must

United States District Court
Northern District of California

1    establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it

2    fell below an "objective standard of reasonableness" under prevailing professional norms.

3    *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's

4    deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

5    unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A

6    reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

7    The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to

8    be "clearly established Federal law, as determined by the Supreme Court of the United States" for

9    the purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011);

10   *Williams*, 529 U.S. at 404-08.  A "doubly" deferential judicial review is appropriate in analyzing

11   ineffective assistance of counsel claims under § 2254.  *See Pinholster*, 563 U.S. at 200-202;

12   *Harrington*, 562 U.S. at 105 (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same).  Judicial

13   scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong

14   presumption that counsel's conduct falls within the wide range of reasonable professional

15   assistance.  *See Strickland*, 466 U.S. at 689; *Pinholster*, 563 U.S. at 196 ("But *Strickland*

16   specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all

17   significant decisions in the exercise of reasonable professional judgment.") (quoting *Strickland*,

18   466 U.S. at 689-90).  The general rule of *Strickland*, i.e., to review a defense counsel's

19   effectiveness with great deference, gives the state courts greater leeway in reasonably applying

20   that rule, which in turn "translates to a narrower range of decisions that are objectively

21   unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing

22   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not

23   whether counsel's actions were reasonable.  The question is whether there is any reasonable

24   argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

25        To show that counsel's performance was deficient, a petitioner must show that counsel

26   made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth

27   Amendment, in that counsel's representation fell below an objective standard of reasonableness.

28   *See Strickland*, 466 U.S. at 687-88.  The relevant inquiry is not what defense counsel could have

United States District Court
Northern District of California

done, but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

To show prejudice from the deficient performance, the petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e. a trial whose result is reliable. *Strickland*, 466 U.S. at 688.  The test for prejudice is not outcome-determinative, i.e., a defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient.  *Id.* at 693.  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  Where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 694).

### B)      Analysis

Broadly categorized, petitioner's IAC claims (1) challenge the trial tactics employed by trial counsel, such as challenging what evidence or testimony was presented and arguing that trial counsel should have made certain objections or focused cross-examination in a certain manner; (2) allege a failure to investigate or secure evidence; and (3) argue that the delay in providing him his case files after the conviction also constituted ineffective assistance.

### 1)      Defense Presented by Trial Counsel

In order to assess petitioner's ineffective assistance of counsel claims, the Court first reviews the defense presented by trial counsel.  Prior to trial, trial counsel issued a subpoena to Children's Hospital for all records of any therapy, counseling or psychological treatment provided to Jane Doe.  RT 83-84.  Children's Hospital provided Jane Doe's records for her therapy sessions related to the sexual assault, which took place over a lengthy period of time.  RT 84-86.  These records were reviewed *in camera* by Judge Northridge, who declined to provide the therapy records to petitioner and his counsel.  RT 85.

Trial counsel filed two motions in limine.  The first defense motion in limine sought to

impeach Jane Doe's credibility by questioning her about the fact that she never reported the alleged sexual abuse to the therapist she saw after she was sexually assaulted by a stranger in 2009. CT 103-10. Trial counsel requested that the trial court review Jane Doe's therapy records again to determine whether Jane Doe had disclosed the alleged sexual abuse by petitioner to the therapist, and to determine if there was any information disclosed in the therapy sessions that was favorable to the defense. RT 86-90. The trial court reviewed Jane Doe's therapy records and found that there was no exculpatory information. RT 91-92. This motion was not opposed by the prosecution and was granted by the trial court. RT 258-61.

The second defense motion in limine sought to impeach Jane Doe's credibility by admitting evidence that Jane Doe stole money from, and lied to, petitioner in order to have sex with her boyfriend. CT 110-12. Trial counsel argued that this evidence was relevant to Jane Doe's credibility because it showed her willingness to lie and steal and that it was probative of Jane Doe's motive for lying about the sexual abuse in that she was upset that petitioner was mad at her for lying about her whereabouts, for leaving her brother at the BART station, and for stealing money. The trial court denied the second motion in limine on the grounds that trial counsel had not made an offer of proof that Jane Doe was upset about petitioner being mad; that trial counsel could not prove that Jane Doe stole the money and lied to petitioner without creating a trial within a trial which would unduly consume time; that the incident was of limited probative value because it happened four to five months before Jane Doe was overheard discussing the sexual abuse with the suicide hotline and because the behavior alleged is "relatively common with teenagers" and not equivalent with a crime of moral turpitude; and that, even if the evidence were probative, it was more prejudicial than probative. RT 95-105.

The prosecution filed motions in limine which requested that, *inter alia*, the defense be prevented from introducing evidence of any of Jane Doe's prior sexual or molestation history; that the defense be prevented from introducing evidence of the contents of any of Jane Doe's school records; that any reference to any mental or physical illness or condition be excluded unless the defense made a showing of relevance; and that any character evidence be excluded. CT 113-19. Trial counsel did not object to these particular motions. Trial counsel stated that the significance

of Jane Doe's prior sexual history was only that she did not tell the therapist about the alleged sexual abuse by petitioner and that she deceived her parents in order to have the consensual sexual encounter. Trial counsel stated that he did not have Jane Doe's school records but regarded their probative value as only bearing upon whether Jane Doe had communicated the alleged sexual abuse to school staff. RT 65-72. The trial court granted the prosecution's motions in limine. The trial court noted that he failed to see any relevance to the school records, except to establish Jane Doe's age, if she did not remember. RT 68.

The closing argument encapsulates trial counsel's trial strategy, which was to emphasize that the prosecution had the burden of proving the allegations beyond a reasonable doubt, and that there were many "reasonable reasons" to doubt that Jane Doe was telling the truth. RT 901, 905, 915. In his closing argument, trial counsel challenged the plausibility of Jane Doe's testimony, noting that no one saw or suspected any sexual abuse over a ten-year period; that her brother forgot asking if the petitioner made Jane Doe give petitioner blow jobs; and that a therapist trained to work with sexual assault victims did not notice that Jane Doe had other issues besides the rape. RT 902-05. Trial counsel also challenged Jane Doe's explanation that she had not told the therapist about the alleged abuse because she knew the therapist would be required to report it, pointing out that Jane Doe disclosed the alleged abuse to the suicide hotline, which was also required to report it. RT 909. Trial counsel challenged Jane Doe's credibility, noting that her story kept changing; that she had oddly specific memories of the abuse she suffered ten years earlier as a six year old,; that she did not tell the Oakland Police Department forensic interviewer about being raped or about being picked up by the CALICO Center or about being molested the day she watched the Lost episode; that outside of the three incidents she described, she had no other specific memories; that her testimony on cross-examination was inconsistent with her testimony on direct; and that her demeanor on the stand was "unusual" enough to prompt a juror to ask if Jane Doe was taking medication for any sort of psychiatric reason. RT 905-08. Trial counsel also reinforced the plausibility of petitioner's testimony that the only time he touched her vagina was when she was six and suffered a urinary tract infection by pointing out that during the pretext call, although petitioner was unaware that he was being recorded, he immediately brought

up the "peeing in her shoes" story when Jane Doe asked why he had touched her when she was six. RT 910-11. Finally, trial counsel argued that there was no evidence of duress presented, emphasizing Jane Doe's testimony that petitioner did not threaten her with discipline if she refused to engage in the alleged sexual acts, and that she managed to avoid engaging in the sexual acts for nearly thirteen months without suffering any consequences from petitioner. RT 911-14.

Trial counsel's cross-examination of Jane Doe was consistent with the trial strategy laid out in the closing argument. Through cross-examination, trial counsel established that the alleged sexual abuse sometimes took place when other people were home; that the door was sometimes open when petitioner had Jane Doe touch him; that the encounters took, on average, between ten to fifteen minutes; that Jane Doe did not tell the Oakland Police Department about either the Sylvan Learning Center incident or the Lost incident; that Jane Doe only remembered those two incidents shortly before trial; that Jane Doe's testimony regarding the first time petitioner touched her vagina with his mouth or with his fingers was inconsistent; that petitioner was actively involved in her education, supported and encouraged her interest in art, and brought her spoons from each state he visited; and that Jane Doe wrote petitioner a letter in January 2011 stating that she wanted to regain his trust. RT 458, 460-62, 464-77, 484, 86.

Trial counsel's direct examination of petitioner also challenged the plausibility of Jane Doe's account of the alleged sexual abuse, while also presenting evidence that Jane Doe initiated and sought out sexual encounters with petitioner. Through petitioner's direct testimony, trial counsel presented evidence that petitioner was frequently away from home for work for long periods of time (RT 774-78; 785-86); that the only time petitioner touched her vagina was to administer medication when she was six (RT 788-89); that the configuration of the Land Rover made it unlikely that a passenger could put her head in the driver's lap (RT 800); that Jane Doe repeatedly made inappropriate sexual advances on petitioner which he refused (RT 801, 805-06, 830); that Jane Doe stole money from her parents so that she could pay for condoms and buy her brother's silence so that she could have sex with her boyfriend (RT 821-22); that Jane Doe wrote petitioner a letter apologizing for stealing the money and asking for petitioner to trust her again (RT 820); and that the alleged rape was actually Jane Doe attempting to have sex with petitioner

1    and petitioner ultimately stopped Jane Doe and told her that it should never have happened and

2    would never happen again (RT 827-35).

3           Reviewing trial counsel's performance with the required "doubly deferential" standard of

4    review, *see Pinholster*, 563 U.S. at 200-02, and indulging the required strong presumption that

5    counsel's conduct fell within the wide range of reasonable professional assistance, *see Strickland*,

6    466 U.S. at 689, the Court finds that it can be reasonably concluded that trial counsel's

7    performance satisfied *Strickland*'s deferential standard.  The trial strategy suggested by petitioner

8    sought to challenge whether Jane Doe's recollection of specific events were credible, whereas trial

9    counsel focused on challenging Jane Doe's *overall* credibility.  Trial counsel's strategy was

10   reasonable because the prosecution did not need to prove beyond a reasonable doubt that *all* of

11   Jane Doe's testimony was accurate, but only needed to prove at least one to three lewd or

12   lascivious acts, or one act of aggravated sexual assault – oral copulation, or one act of aggravated

13   sexual assault – forcible penetration, or one act of forcible rape, or one act of forcible oral

14   copulation, happened within a certain time period.[3]  Much of the trial strategy preferred by

15   petitioner, such as emphasizing petitioner's travel records or the layout of the Land Rover, sought

16   to prove that the sexual abuse could not have happened with the frequency alleged by Jane Doe or

17   that certain specific events alleged did not happen.  However, this evidence did not preclude a jury

18   from finding that petitioner had abused Jane Doe at least once during each relevant time period.  In

19   addition, the jury could have reasonably believed that, given Jane Doe's age at the time of alleged

20   sexual abuse, she was telling the truth about the occurrence and general frequency of the alleged

21

22   [3] For example, with respect to the charge of continuous sexual abuse of a child under the age of 14
     years in violation of Cal. Penal Code § 288.5 (Count 1), this charge requires the prosecution to
23   prove that *inter alia* that the defendant engaged in three or more lewd or lascivious acts with a
     child under the age of fourteen years at the time of the acts and that three or more months passed
24   between the first and last acts.  RT 936-37.  With respect to the charges of aggravated sexual
     assault of a child, oral copulation, in violation of Cal. Penal Code § 269(a)(4) (Counts 3, 4, 5, 7, 9,
25   11), this charge requires the prosecution to prove that *inter alia* defendant committed an act of oral
     copulation with Jane Doe without her consent and by duress the year she was eight years of age,
26   the year she was nine years of age and so on, through age thirteen.  With respect to the charges of
     aggravated sexual assault of a child, forcible penetration, in violation of Cal. Penal Code §
27   269(a)(5) (Counts 6, 8, 10, 12), this charge requires the prosecution to prove that *inter alia*
     defendant committed an act of sexual penetration with Jane Doe without her consent and by duress
28   the year she was ten years of age, the year she was eleven years of age, and so on, through age
     thirteen.

United States District Court
Northern District of California

sexual abuse even if she did not remember, or was inaccurate as to, exact dates or occurrences. Given this context, trial counsel reasonably chose the trial strategy of attacking Jane Doe's overall credibility by arguing that her version of events was implausible, by pointing out inconsistencies in her trial testimony, and by highlighting how the specific events she testified about at trial were only recently remembered and were not disclosed previously to therapists or investigators.

### 2)  IAC Claims Related to Trial Strategy and Tactics

Petitioner's first category of IAC claims challenge the trial tactics employed by trial counsel.  Within this category, there are two subcategories: (1) IAC claims related to how evidence was presented or witnesses were cross-examined; and (2) IAC claims arguing that trial counsel was ineffective for failing to object to the prosecution's numerous leading questions, staged testimony, improper remarks about petitioner, and misleading, slanderous and inaccurate statements made during closing argument.

With respect to the first subcategory, petitioner argues that that trial counsel erred in failing to emphasize the "peed in my shoes" incident; in failing to elicit testimony regarding the inconsistencies in the phone call; in failing to secure evidence regarding Jane Doe's history of emotional issues and learning issues and in failing to present this evidence; in failing to obtain Jane Doe's school records which would prove that there was no record of Jane Doe crying in a one-on-one session while writing her name and that petitioner was directly involved in her education and was regarded by teachers as an overall positive influence in Jane Doe's life; in failing to elicit testimony from either Hoffman, petitioner or Jane Doe that petitioner only wore button-fly jeans which would cast doubt on the credibility of Jane Doe's sexual abuse allegations because she stated that she unzipped petitioner's jeans; in failing to elicit testimony from Hoffman regarding the plausibility of a passenger in the Land Rover being able to put her head in the driver's lap; in failing to call Jane Doe's older brother to the stand to testify regarding whether he and Jane Doe spoke about the alleged sexual abuse; in failing to determine the existence of the journal wherein Jane Doe allegedly recorded the abuse because the lack of existence of the journal would have challenged Jane Doe's credibility; in failing to obtain and present Jane Doe's CALICO interview to show inconsistencies in her descriptions of the alleged sexual abuse; in

United States District Court
Northern District of California

failing to have Jane Doe undergo a psychological exam to establish that her memory was affected by her early years with drug addicted parents and her tendency towards chemical abuse and to establish that she had reactive attachment disorder; in failing to establish how infrequently petitioner was home by introducing into evidence petitioner's work and travel schedule, the color-coded calendar prepared by petitioner illustrating the work and travel schedule, petitioner's media passes, and petitioner's airline records because the visual impacts of these records would have been far more persuasive in establishing petitioner's frequent absences from the home than testimony by petitioner, Jane Doe or Hoffman; in failing to present the January 8, 2012 family photo as evidence to challenge Jane Doe's credibility because it was taken four days after Jane Doe authored the note stating that she was in great pain and showed Jane Doe looking extremely happy; and in failing to argue that if Jane Doe could not remember a three-week long rash at age six, her recollection of events when she was six was unreliable.  *See* Dkt. Nos. 8, 12, 34.

The Court finds that there was a reasonable basis for the state court to deny relief on this subcategory of IAC claims.

First, many of these alleged failures – such as declining to emphasize the "peed in my shoes," declining to use the color coded calendar prepared by petitioner, declining to argue that the inability to recall a three week rash proved Jane Doe's memory was unreliable, reviewing step-by-step where petitioner was during the pretext phone call, emphasizing the family photo – are simply a difference of opinion as to trial tactics, which does not constitute denial of effective assistance. *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981); *see also Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984) (tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available).  Trial counsel did present many of the above arguments and evidence.  Simply because trial counsel did not present or emphasize the arguments or evidence in the manner suggested by petitioner does not constitute ineffective assistance of counsel and, in this particular case, was a reasonable choice by trial counsel.  As discussed above, given the burden of proof required for the charges, i.e. that the prosecution only needed to prove that one incident happened per time period, trial counsel reasonably chose to focus Jane Doe's overall credibility, rather than attempt to prove that Jane

Doe was wrong about certain time periods and dates.  For example, it is entirely plausible, and a reasonable jury could decide, that a person would remember an incident of sexual abuse that happened when she was six years old, especially repeated incidents of sexual abuse, while forgetting a painful vaginal rash that occurred at the same time, given that sexual abuse is far more traumatizing than a vaginal rash.  Petitioner's color-coded calendar, media passes, and airline records, at most, could prove that the alleged sexual abuse could have not have happened as frequently as Jane Doe claimed, but do not establish that no sexual abuse happened.

Second, trial counsel was precluded from pursuing some of the trial tactics preferred by petitioner.  Specifically, the trial court excluded evidence regarding Jane Doe's mental or physical illnesses, condition or history, whether introduced via Jane Doe's school records or via petitioner's attempted testimony regarding Jane Doe's home life prior to being adopted.  RT 68, 790-92. When it appeared that petitioner intended to testify that Jane Doe had been abused prior to her adoption, the trial court immediately halted the testimony and sent the jurors out before admonishing trial counsel and petitioner that testimony regarding any alleged prior inappropriate sexual conduct on Jane Doe had been excluded.  RT 789-96.  Trial counsel was not ineffective for failing to argue issues that the trial court had excluded.  *See, e.g., Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (claim that appellate counsel was ineffective for failing to argue inadequate notice of the charge must fail because counsel "would not have been successful").

Third, to the extent that petitioner argues that Jane Doe's brother should have been called as a witness, or that certain questions should have been asked of other witnesses, or that Jane Doe should have been examined by an independent psychologist, there is no evidence that Jane Doe's brother's testimony or the asking of these questions or a psychological exam would have resulted in evidence or testimony favorable to petitioner.  For example, there is no evidence in the record that Hoffman would have confirmed that petitioner wore button-fly jeans.  Hoffman did not remember the three-week rash and "peed in my shoes" story that petitioner argued was significant in Jane Doe's childhood, so it unclear whether she recalled what kind of jeans petitioner wore or if petitioner did wear such jeans.  Hoffman was also a prosecution witness, hostile to petitioner, and had divorced him.  Trial counsel reasonably limited his cross-examination of Hoffman to focus

17

1  primarily on petitioner's work and travel schedule.  Petitioner has presented no evidence from

2  which it can be reasonably inferred that Jane Doe's brother's testimony would have been favorable

3  to petitioner, or that a psychological exam would have established that Jane Doe was not credible.

4  Petitioner has not established that these particular trial tactics would have resulted in a favorable

5  outcome for him, and has therefore failed to establish prejudice under the *Strickland* standard.

6  *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (mere speculation concerning possible

7  testimony of witnesses who were not called does not establish prejudice for purposes of an

8  ineffective assistance claim); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002)

9  ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because

10  allegations of what the witness would have testified are largely speculative. . . . In addition, for

11  [petitioner] to demonstrate the requisite Strickland prejudice, [he] must [also] show [ ] that [the]

12  testimony would have been favorable")."  Moreover, the United States Supreme Court has never

13  required defense counsel to pursue every nonfrivolous claim or defense, regardless of its merit,

14  viability, or realistic chance of success.  *Knowles v. Mirzayance*, 556 U.S. 111, 125, 127 (2009).

15         With respect to the second subcategory, petitioner argues that trial counsel was ineffective

16  because he failed to object when the prosecution corrected Jane Doe's mistaken statement that the

17  Lost episode was in 2004, when the prosecution introduced Lost's Wikipedia page, when the

18  prosecution badgered petitioner (RT 845-854), and when, in his closing argument, the prosecution

19  made inaccurate statements, made personal observations, slandered petitioner, and misconstrued

20  the testimony and facts.  Assuming arguendo that these failures constituted deficient performance,

21  petitioner has failed to demonstrate prejudice under *Strickland*.  Given that Jane Doe was between

22  9 and 10 years of age during the Lost episode, that continuous sexual abuse would be a severely

23  traumatizing experience, and that Jane Doe testified that she sometimes had trouble recalling the

24  specifics of the abuse, the jury could reasonably conclude that Jane Doe's testimony was credible

25  even if it also found that she was confused as to the specific dates of the abuse, i.e. when the Lost

26  episode took place.  Similarly, even if trial counsel had successfully stopped the allegedly

27  badgering cross-examination, that alone would not have caused the jury to have a reasonable

28  doubt respecting petitioner's guilt; the portion of the cross-examination at issue did not elicit

18

1    testimony damaging to petitioner.  Finally, petitioner has not demonstrated that, absent the failure

2    to object to the alleged improper statements in the prosecution's closing argument, the factfinder

3    would have had a reasonable doubt respecting guilt.  There was ample evidence from which the

4    jury could have reasonably determined that petitioner was guilty of the crimes charged, such as

5    Jane Doe's testimony, the mixed semen and saliva samples, Jane Doe's contemporaneous note

6    included with the saliva samples, and the jailhouse call and testimony wherein petitioner admitted

7    to at least one instance of sexual contact, albeit allegedly brief, accidental, and coerced, with Jane

8    Doe.  *See, e.g.*, *Weygandt v. Ducharme*, 774 F.2d 1491 (9th Cir. 1985) (failure to object to

9    prosecutor's improper closing remarks falls short of constitutional prejudice when considered

10   within "totality of the evidence").

### 3)    IAC Claims Alleging Failure to Investigate

12           Petitioner alleges that trial counsel was ineffective because he failed to procure Jane Doe's

13   school records which would have challenged her credibility because Jane Doe did not report to

14   any of the specialists whom she worked with regularly that she was being abused and would have

15   established that Jane Doe had emotional issues; because he failed to obtain Jane Doe's letter to

16   petitioner requesting his forgiveness and to be trusted again which would have proven her motive

17   to lie about the abuse; because he failed to obtain the CALICO interview that would have

18   challenged Jane Doe's credibility because she referred to zip-up jeans when petitioner exclusively

19   wore button-fly jeans and made statements inconsistent with other testimony; because he failed to

20   get Oakland Police Office Campo's case notes; and because he failed to obtain Jane Doe's journal

21   or ascertain that no such journal existed proving her tendency to lie.  A defense attorney has a

22   general duty to make reasonable investigations or to make a reasonable decision that makes

23   particular investigations unnecessary.  *See Hinton*, 571 U.S. at 274; *Cullen v. Pinholster*, 563 U.S.

24   170, 195 (2011); *Strickland*, 466 U.S. at 691; *Weeden*, 854 F.3d at 1070 (investigation must

25   determine trial strategy, not other way around).  *Strickland* directs that "'a particular decision not

26   to investigate must be directly assessed for reasonableness in all the circumstances, applying a

27   heavy measure of deference to counsel's judgments.'"  *Silva v. Woodford*, 279 F.3d 825, 836 (9th

28   Cir. 2002) (quoting *Strickland*, 466 U.S. at 491).  A claim of negligence in conducting pretrial

United States District Court
Northern District of California

investigation can form the basis for a claim of ineffective assistance.  *See United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983).

The Court has conducted an independent review of the record and applied the required "heavy measure of deference to counsel's judgments," and concludes that the investigation conducted by trial counsel was reasonable and that there was no prejudice caused by the alleged failure to investigate.  It is clear from the record that due to trial counsel's investigation, he was aware of petitioner's involvement with Jane Doe's school life, of Jane Doe's history of abuse prior to being adopted, of Jane Doe's educational challenges in elementary school, of the layout of the house, of petitioner and Hoffman's work schedules and daily routines during the relevant time period, of Jane Doe's rape by a stranger and subsequent therapy, of the layout of the Land Rover, of the possibility that Jane Doe had an alcohol abuse problem, and that Jane Doe had been drinking right before her call to the suicide hotline.  The further evidence which petitioner argues that trial counsel should have collected was either cumulative of what was already known to trial counsel, not exculpatory, or had been excluded by the trial court.  Trial counsel was aware of, and presented, other evidence that challenged Jane Doe's credibility.  *See, e.g.*, RT 464-68.  While Jane Doe's mental health history or educational difficulties were relevant to credibility, not only were they excluded by the trial court, they would not conclusively establish that Jane Doe was lying.  Moreover, questioning along those lines risked giving the jury the impression that trial counsel was badgering a sexual assault victim and risked creating sympathy for the victim at petitioner's expense.  Finally, the trial court had excluded much of the information which petitioner alleged should have introduced, specifically Jane Doe's prior mental or emotional health issues and Jane Doe lying to petitioner about stealing money and lying in order to have sex with her boyfriend.

### 4) IAC Claims Related to Trial File

Petitioner's IAC claim regarding trial counsel's failure to promptly turn over this case file so that he could prepare his habeas petition fails to state a cognizable claim for ineffective assistance of trial counsel.  This claim is unrelated to trial counsel's performance at trial.

After conducting an independent review of the record and applying the doubly deferential

1    standard of review, the Court finds that petitioner is not entitled to habeas relief on his ineffective

2    assistance of counsel claims.  The state court's denial of petitioner's ineffective assistance of

3    counsel claims was not an unreasonable determination of the facts in light of the evidence

4    presented in the state court proceeding; nor was it an unreasonable application of clearly

5    established federal law.

6            **2.**      **Exclusion of Evidence**

7        Petitioner's claims regarding exclusion of evidence were denied on procedural grounds, so

8    this Court conducts an independent review of the record to determine whether the state court

9    denial was objectively reasonable, keeping in mind that the petitioner has the burden of showing

10   that there was no reasonable basis for the state court to deny relief.  *See Harrington*, 562 U.S. at

11   98.

12             **A)**      **Legal Standard**

13        A state court's evidentiary ruling is not subject to federal habeas review unless the ruling

14   violates federal law, either by infringing upon a specific federal constitutional or statutory

15   provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process.

16   *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th

17   Cir. 1991).  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish

18   rules excluding evidence from criminal trials."  *Holmes v. South Carolina*, 547 U.S. 319, 324

19   (2006) (alteration in original) (internal quotation marks omitted); *see also Montana v. Egelhoff*,

20   518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to

21   present all relevant evidence).  This latitude is limited, however, by a defendant's constitutional

22   rights to due process and to present a defense, rights originating in the Sixth and Fourteenth

23   Amendments.  *See Holmes*, 547 U.S. at 324. "While the Constitution prohibits the exclusion of

24   defense evidence under rules that serve no legitimate purpose or that are disproportionate to the

25   ends that they are asserted to promote, well-established rules of evidence permit trial judges to

26   exclude evidence if its probative value is outweighed by certain other factors such as unfair

27   prejudice, confusion of the issues, or potential to mislead the jury."  *Holmes*, 547 U.S. at 325-26;

28   *see Egelhoff*, 518 U.S. at 42 (holding that the exclusion of evidence does not violate Due Process

United States District Court
Northern District of California

1    Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our

2    people as to be ranked as fundamental."). But "at times a state's rules of evidence cannot be

3    mechanistically applied and must yield in favor of due process and the right to a fair trial."

4    *Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (finding California's application of its

5    evidentiary rules to exclude hearsay testimony that bore persuasive assurances of trustworthiness

6    and was critical to the defense violated right to present evidence).

7                    **B)    Analysis**

8             Petitioner argues that the trial court erred in excluding evidence of Jane Doe's medical

9    records and school records, of Jane Doe stealing money, of prior instances where Jane Doe had

10   lied, of an instance where Jane Doe manipulated her younger brother to lie to her parents, and of

11   Jane Doe's emotional and sexual abuse history. Dkt. No. 34 at 40-43.

12            The state court's denial of this claim was not an unreasonable determination of the facts in

13   light of the evidence presented in the state court proceeding. Assuming arguendo that Jane Doe's

14   medical history and school records would show that Jane Doe was myopic, dyslexic, emotionally

15   sensitive and emotionally volatile, and had severe learning difficulties; and would show that Jane

16   Doe had previously suffered sexual abuse before she was adopted by petitioner and his wife at age

17   three and a half, this does not conclusively establish that Jane Doe's testimony could not be

18   trusted. Not all individuals with learning disabilities and emotional issues are untrustworthy or

19   prone to making false accusations of abuse. Even if this evidence is relevant, in the very broad

20   sense, to Jane Doe's credibility, the trial court reasonably applied California evidentiary law in

21   excluding this evidence as more prejudicial than probative. There were other, more direct, means

22   of challenging Jane Doe's credibility, which trial counsel employed, such as pointing out

23   inconsistencies between Jane Doe's police statements, preliminary examination testimony, and

24   direct testimony; arguing that Jane Doe's account of the sexual abuse was implausible because no

25   one noticed despite the open and frequent nature of the alleged abuse and because Jane Doe did

26   not tell anyone else about the alleged abuse; and questioning whether a child could clearly

27   remember such events. Evidence that Jane Doe was abused years prior to her first disclosing the

28   abuse, and that Jane Doe had learning disabilities and emotional issues in elementary school had

                                                        22

1    minimal probative value.  With respect to the theft of $50 and the lying accompanying her sexual

2    encounter with her boyfriend, the Court agrees with the trial court that this incident is of limited

3    probative value because a teenager lying to her parent is a relatively common occurrence that does

4    not establish that the teenager is a habitual liar, and because the incident happened months before

5    the call to the suicide hotline which Jane Doe made without realizing that her mother would hear.

6    Petitioner takes issue with the trial court's exclusion of this information on the grounds that the

7    trial court did not know how Jane Doe would respond to questions about the theft and instructing

8    her brother to lie for her.  Petitioner argues that a court can never be sure how a witness will

9    respond to questioning, so this is not reasonable grounds for excluding this line of questioning.

10   However, in this case, the concern was that if Jane Doe denied that the incident occurred,

11   petitioner could not prove the incident occurred without creating a trial within a trial which would

12   unduly consume time.  The trial court properly excluded this incident after weighing the limited

13   probative nature of the evidence against the potential of creating a trial within a trial.

14          Nor was the state court's denial of this claim an unreasonable application of clearly

15   established federal law.  The Supreme Court has recognized that "well-established [state] rules of

16   evidence permit trial judges to exclude evidence if its probative value is outweighed by certain

17   other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury,"

18   *Holmes*, 547 U.S. at 325-26, as was the case here.

19          Habeas relief is therefore denied on this claim.

20          **3.      Judicial Misconduct**

21          Petitioner claims that his trial judge engaged in misconduct by demonstrating bias or an

22   appearance of advocacy.  Dkt. No. 34 at 44-53.  The California Court of Appeal summarized and

23   rejected petitioner's claim as follows:

24          Appellant argues he was denied his due process right to a fair trial by an impartial judge
            because the court "interjected herself" into the proceedings by taking "over questioning for
25          the prosecution," expressing her "personal feelings," and assisting the prosecution.  We
            disagree.

26          "Although 'the trial court has both the duty and the discretion to control the conduct of the
27          trial' [citations], 'the Due Process Clause clearly requires a "fair trial in a fair tribunal,"
            [citation], before a judge with no actual bias against the defendant or interest in the
28          outcome of his particular case.' [Citations.]"  *(People v. Harris* (2005) 37 Cal.4th 310, 346

United States District Court
Northern District of California

23

(*Harris*).)  "'The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth.  It is his primary duty to see that justice is done both to the accused and to the people.'"  (*People v. Raviart* (2001) 93 Cal.App.4th 258, 272, quoting *People v. Golsh* (1923) 63 Cal.App. 609, 614-615.)

A "'trial court commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression that it is allying itself with the prosecution.'"  (*People v. Sturm* (2006) 37 Cal.4th 1218, 1233, quoting *People v. Carpenter* (1997) 15 Cal.4th 312, 353, *overruled by statute on other grounds in Verdin v. Superior Court* (2008) 43 Cal.4th 1096.)  "Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trial."  (*Id.* at p. 1233.)  "The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.  Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.  [Citation.]'"  (*Harris*, *supra*, 37 Cal.4th at p. 347.)

## A.  Appellant's Claim is Waived

Where a defendant contends the court "'consistently displayed a bias in favor of the prosecution'" but never objected to the trial court's participation in the examination of witnesses, defendant has waived any claim of error.  (*People v. Raviart*, *supra*, 93 Cal.App.4th at p. 269.)  "It is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred."  (*People v. Corrigan* (1957) 48 Cal.2d 551, 556.)  Here, appellant's failure to object on the ground of judicial bias forfeits the claim on appeal.  (*People v. Chatman* (2006) 38 Cal.4th 344, 397; *Harris*, *supra*, 37 Cal.4th at p. 350; *People v. Snow* (2003) 30 Cal.4th 43, 78.)

## B. Appellant Has Not Demonstrated Judicial Bias

We consider appellant's claim of judicial misconduct on the merits and reject it.  Appellant's examples fall into three categories: (1) the court was sympathetic to the prosecution; (2) the court was antagonistic to the defense; and (3) the court overstepped its bounds during trial.

### i. The Court's Interaction with Prosecution Witnesses

Appellant asserts the court displayed a sympathetic attitude to the victim and assisted her with her testimony.  Appellant argues the court improperly commented on personal items Doe had with her in court.  The court stated: "So the record should reflect that she has a Rubik's [C]ube, which is perfectly aligned.  I don't know if that's just out of the package.  But good going.  And then a picture that she has with her.  Cute dog."  In response to questions about the Rubik's Cube and picture, Doe explained they are a comfort to her.  The court then responded to Doe's statements that her biological father and brother can solve the Rubik's Cube, just like she can.  Appellant cites no authority to support his claim that the court's comments were in any way improper.  As the People point out, the court was attempting to put Doe at ease and there is nothing improper about the court being "nice" to a witness.  She was an 18-year-old being asked to testify in court about molestations by her father which presented an uncomfortable and intimidating situation.  (See Cal.Code Jud. Ethics, canon 3B(4) ["A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity ..."]; Cf. *People v. Sturm, supra*, 37 Cal.4th at p. 1240 [it is misconduct for a trial judge to convey to the jury disdain for witnesses and their testimony].)

Appellant contends that the court improperly clarified Doe's testimony.  There are, in fact, several examples throughout the witnesses' testimony of the court clarifying dates, time periods, and other facts.  Appellant does not and cannot demonstrate these clarifications are prejudicial or inappropriate.  "'Numerous courts including our own have recognized that it is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that ambiguities and conflicts in the evidence are resolved insofar as possible.'" (*People v. Raviart, supra*, 93 Cal.App.4th at p. 270, quoting *People v. Carlucci* (1979) 23 Cal.3d 249, 255.)

According to appellant, one of these clarifications helped the prosecution establish duress.  Doe testified when appellant would ask her to touch him, she would whine about it.  The court clarified the time period, "Just for the record, we were talking about when you were 7.  Did you whine when you were 6, as well as sort of your response?"  The court's clarification was not improper.  A trial court's participation in the examination of witnesses involving "questions seeking to clarify the testimony" does not constitute judicial misconduct.  (*People v. Raviart, supra*, 93 Cal.App.4th at p. 270.)  Here, the court's questions were "neither repetitious, disparaging, nor prejudicial."  (*Id.* at p. 271; *People v. Hawkins* (1995) 10 Cal.4th 920, 947-948, overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 109-110 [a trial judge may question witnesses to clarify testimony or assist the jury in understanding the evidence].)

Appellant also argues the court improperly engaged in an extensive colloquy with Doe.  In attempting to clarify Doe's testimony about disclosing the abuse to her mother and her mother calling the crisis hotline, the court asked Doe seven questions.  The questions summarized and clarified Doe's testimony about the topic.  "Evidence Code section 775 ' "confers upon the trial judge the power, discretion and affirmative duty" ... [to] participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause.'" (*Harris, supra*, 37 Cal.4th at p. 350, quoting *People v. Carlucci, supra*, 23 Cal.3d at p. 256; *People v. Pierce* (1970) 11 Cal.App.3d 313, 321 ["The mere fact that a judge examines a witness at some length does not establish misconduct, nor does the fact that the testimony elicited by the judge's questions would probably have been elicited by counsel."].)  We conclude "[t]he court's questions were neither repetitious, disparaging, nor prejudicial." (*People v. Raviart, supra*, 93 Cal.App.4th at p. 271.)

*ii. The Court's Interaction with Appellant and Appellant's Counsel*

Appellant asserts the court had an antagonistic attitude toward appellant and his counsel.  "A trial court commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression it is allying itself with the prosecution." (*People v. Carpenter, supra*, 15 Cal.4th at p. 353; *People v. Fudge* (1994) 7 Cal.4th 1075, 1107.)  Here, "[w]e have read each of the alleged instances of hostility in context.  They fall far short of establishing misconduct or 'betray[ing] a bias against defense counsel.'" (*People v. Carpenter, supra*, 15 Cal.4th at p. 353, quoting *People v. Wright* (1990) 52 Cal.3d 367, 411, *overruled on other grounds in People v. Williams* (2010) 49 Cal.4th 405, 459.)

Appellant argues the court limited any introductory testimony while appellant was on the stand, but allowed such testimony from Doe.  The record does not support this assertion.  Defense counsel asked appellant several introductory questions, including how long he had been married, where he met his wife, and the type of work he did.  The prosecutor objected on relevance grounds when counsel asked appellant what he studied in college and the court sustained the objection.  After the prosecutor objected to the details of appellant's

work history as irrelevant, the court overruled the objection and allowed appellant to testify because it was "background and foundational."

Appellant also argues the court's clarifying questions during his testimony demonstrated bias. Appellant identifies two instances where the court asked specific questions clarifying the time frame in which an incident occurred, one instance where the court clarified who appellant meant when he used the term "her bedroom," and one instance where the court responded to an objection by the prosecutor that defense counsel had not posed a proper question. Appellant asserts these questions were designed to interrupt defense counsel's questioning and demonstrated the court's bias. We disagree. The record demonstrates the court asked clarifying questions about specific dates, ages, names, and time frames of other witnesses at trial including Doe, mother, and one of the investigating officers. As we have stated, a judge may ask questions to clarify witness testimony and to assure the evidence is fully developed. (*People v. Raviart, supra*, 93 Cal.App.4th at p. 270; *People v. Hawkins, supra*, 10 Cal.4th at pp. 947-948; *People v. Abel* (2012) 53 Cal.4th 891, 917, quoting *People v. Santana* (2000) 80 Cal.App.4th 1194, 1206 ["'[T]he court has a duty to see that justice is done and to bring out facts relevant to the jury's determination'"]; *People v. Carlucci, supra*, 23 Cal.3d at p. 255 [" '[I]f a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them.'"].)

Appellant next asserts the court contradicted him when he stated preseason for the NFL began in September or October and preseason games were in October. When defense counsel asked: "Pre-season?," the court stated, "No. I can take judicial notice of the fact that it is in August and may be the first week of September." Defense counsel stated, "I am with the judge on that one, but that's all right." Appellant then said, "I'm sorry" and the court responded, "That's all right." While it may have been preferable for the court to avoid such distracting comments, they were not prejudicial. Our Supreme Court has held that even where a sarcastic or joking remark was improper, it does not create prejudice if it could not have had an effect of the jury's verdict. (*People v. Abel, supra*, 53 Cal.4th at p. 916.) Here, appellant asserts the court's comment was designed to demonstrate the court's "lack of belief in [appellant's] credibility." The comment could just as likely been the court's attempt to ease tension by reference to a shared area of interest. (*Id.* at p. 915 ["[A]s with the other remarks made by the court throughout the trial, the comment reflects the court's propensity for quipping whenever the opportunity arose"].)

Appellant also claims that when he began to testify about a prohibited issue, the court responded too "abruptly." During his testimony, appellant began to talk about Doe at the time of her adoption and said, "Well, she came to us fairly—." The prosecutor objected and the court said, "Whoa. I am with you now." The court told the jury counsel needed to appear in chambers before appellant responded. Outside the presence of the jury, the court advised counsel it was concerned appellant would testify Doe was abused before she came to live with appellant and defense counsel agreed. Defense counsel offered to move on to another topic, but the court stated that it needed to admonish appellant directly, outside the presence of the jury. Appellant needed to understand it was "not an appropriate subject" and the court did not want to risk contaminating the jury. The court returned to the courtroom and told the jury, "I am going to need to take a quick break outside of your presence because I need to put some things on the record that are not for the jury's purview."

In accordance with its duty to control the proceedings, when it became apparent appellant was going to provide inadmissible evidence, the court interrupted appellant's testimony and conferred with counsel outside the presence of the jury. (§ 1044 ["It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."];

*People v. Sturm, supra,* 37 Cal.4th at p. 1237 ["The trial court has a statutory duty to control trial proceedings, including the introduction and exclusion of evidence."] )

Next, appellant argues that when the court asked him about his tone of voice during a dramatic interaction with his daughter, it showed the court disbelieved his testimony. Appellant described an incident when Doe snuck up on him and put her hand on his penis and tried to put her mouth on his penis. Appellant testified that he said, "Honey, you need to leave." The court then inquired: "In the same tone you are using now?" and appellant said, "yes." The court stated, "A very calm voice; is that how you described it." Appellate counsel attempts to draw an inference that this exchange demonstrated the court "disbeliev[ed] [appellant's] testimony." We could, however, reach the opposite conclusion and find the court was attempting to assist appellant by emphasizing his calm voice. We cannot deduce the court's reason from the record and cannot conclude that the court's attempt to clarify appellant's tone was misconduct.

In passing, appellant cites *People v. Santana* (2000) 80 Cal.App.4th 1194 (*Santana*), where the Second District reversed a conviction for judicial misconduct. In *Santana*, the trial court asked extensive questions of the defense witnesses and belabored points of evidence that were adverse to Santana taking "on the role of prosecutor rather than that of an impartial judge." (*Id.* at p. 1207.) Defense counsel objected multiple times to both the court's questioning of witnesses and using facial expressions that indicated the court did not believe the appellant. The *Santana* court held the trial court "intervened as an adversary to such an extent" to constitute misconduct, and explained the "record before us reveals the trial court repetitiously, disparagingly and prejudicially questioned defense witnesses[.]" (*Ibid.*) "By continuing this adversarial questioning for page after page of reporter's transcript, the trial court created the unmistakable impression it had allied itself with the prosecution in the effort to convict Santana. These instances of impropriety are so egregious as to require reversal of Santana's conviction." (*Ibid.*)

Unlike *Santana*, we do not find the court was allied with the prosecution or biased against appellant or defense counsel. On appeal, appellant fails to cite examples where the court made rulings favorable to the defense or assisted during appellant's testimony. At one point during cross-examination of Doe, the prosecutor objected that defense counsel had mischaracterized Doe's testimony. The court sustained the objection and provided a detailed explanation to defense counsel and then stated, "But I understand what you're getting to and I just think the way it is characterized I am just going to sustain it." Counsel stated he understood and the court replied, "You got it. We just have to get it in the right form." At another instance, during the direct examination of appellant, the court sustained an objection by the prosecutor to a question about Doe manipulating her brother. After a few additional questions, the court stated, "I am going to reverse my ruling" and explained the testimony was relevant to appellant's state of mind. (*People v. Raviart, supra,* 93 Cal.App.4th at pp. 271-72 ["Defendant contends the trial court "'consistently displayed a bias in favor of the prosecution'" but offers no concrete example of any such bias, and we find none ourselves."].)

Finally, at the sentencing hearing the court complimented both counsel on the record: "Counsel, I really want to commend each of you for trying what I will call an admirably professionally tried and competently tried case for both the People, as well as for the defense. [¶] You have a lot of legal acumen, both of you. Clearly your experience in trying cases shows, but your professionalism and your respect that you showed to one another and to the Court in this sensitive type of a case is absolutely noted by the Court, and it really has been an honor for me as the judge to have both of you in this courtroom to try this matter." (See *People v. Wright* (1990) 52 Cal.3d 367, 411, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459 [finding no merit to appellant's contention that the judge was biased against the appellant or defense counsel where "the trial court voiced considerable praise for counsel's abilities and performance."].)

*iii. The Court Did Not "Overstep" its Role*

Appellant asserts the court overstepped its bounds by questioning witnesses and providing explanatory rulings restating witness testimony. The court asked questions of all six witnesses. As detailed in the previous two sections, many of these questions were to clarify facts for the jury. One example appellant provides is during the testimony of the criminalist, the court asked several clarifying questions. The court stated, "For those of us who took biology a long time ago, I just want to make sure we are all following you" and then asked about the DNA typing of epithelial cells. Later the court asked the criminalist to explain what alleles are. When the witness identified the match of appellant's profile to the examined cells from the tissues as 1 in 175 quintillion, the court asked, "It is like 18 zeros?" When the witness stated the probability as 1 in 127 quintillion, the court asked if the earth has less people and the witness said the earth has 7 billion people and the court asked if this number is greater than that. We do not need to go through a myriad of examples because we conclude that the court asked questions of both prosecution and defense witnesses equally. (Cf. *People v. Sturm, supra*, 37 Cal.4th at p. 1241.) The court's questions were limited in quantity and sought only to clarify each witnesses' testimony. We have "thoroughly reviewed the transcript of the trial and each instance of the trial court's participation in the questioning of witnesses, and we are satisfied that the trial court's involvement did not constitute misconduct." (*People v. Raviart, supra*, 93 Cal.App.4th at p. 271.)

Appellant cites two instances where the court summarized Doe's testimony in asking a question or ruling on an objection. The court summarized Doe's testimony about why she remembered the first time she orally copulated appellant and asked Doe if the court's summary was correct. In another exchange, the prosecutor asked Doe if she feared there would be consequences if she did not perform sex acts with appellant when she was 12 or 13 years old. Doe replied yes and the prosecutor asked, "What did you think might happen?" Defense counsel objected to the question as "[a]sked and answered" and the court overruled the objection and stated that an earlier response was not referencing Doe at age 12 or 13. The court stated, "I know she has described the safety issue, but I think more specifically he is asking, What did you think, in fact, would occur. I know she has described some things when she was at 6–ish and 7, but I don't know that we have 12 and 13. It's overruled." The prosecutor asked a few questions about her safety concerns at ages 12 and 13 and Doe seemed not to understand the questions. The court then interjected, "She did say that she felt there was a safety issue, she felt in terms of trying to get out of the situation, she needed to tell someone, and she was scared out of her mind that the [appellant] might murder her mother, that he would beat her if she went about it the wrong way. So that is part of the testimony now, Counsel."

We do not endorse the trial judge's explanatory rulings restating testimony. "[W]e would not endorse all of the trial court's questioning quoted above and, indeed, would find some of it inappropriate. On the facts of this case, however, we find no prejudice." (*Harris, supra*, 37 Cal.4th at p. 350.) While we find that some of the court's comments "'would have been better left unsaid,'" we do not believe the court's behavior "'was so prejudicial that it denied [defendant] a fair, as opposed to a perfect, trial.'" (*People v. Snow, supra*, 30 Cal.4th at p. 81, quoting *United States v. Pisani* (1985) 773 F.2d 397, 402.)

The court was actively engaged in the trial but did not express its personal beliefs or exhibit bias toward appellant. "A careful examination of the record convinces us that the judge's questions were not a guise for conveying to the jury the court's disbelief in defendant's evidence but were asked to get the truth established, and that they fairly and impartially brought out relevant and material testimony." (*People v. Rigney* (1961) 55 Cal.2d 236, 244.)

28

*C. Appellant Cannot Demonstrate Prejudice*

The Supreme Court has applied the standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), to analyze prejudice in like circumstances. (*Harris, supra*, 37 Cal.4th at pp. 350-351.)  Under the *Watson* standard, reversal is required if it is reasonably probable a different outcome would have resulted in the absence of the misconduct.  Here, the evidence of appellant's guilt was overwhelming.  Doe testified to years of abuse and provided clear testimony about the types of abuse beginning at age six.  She collected appellant's ejaculations in tissues and saved them.  The criminologist testified the sperm contained appellant's DNA.  In the pretext call, appellant admitted the abuse by telling Doe she would no longer have to touch him, suck him, or have sex with him.  Appellant admitted when Doe was 16 years old, she performed oral sex on him and his penis "entered her vagina very briefly."

Further, we presume the jurors followed the court's instructions and decided the case based on the evidence before them. (*Harris, supra*, 37 Cal.4th at p. 350.)  The court instructed the jury: "It is not my role to tell you what your verdict should be.  Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be."  It is not reasonably probable that the jury would have reached a different verdict in the absence of the court's participation in the trial. (*Id.* at p. 347 [some of trial judge's questions to defendant were inappropriate, but not prejudicial because the evidence of guilt was strong].)

*McCarthy*, 2015 WL 1774398, at *3-*8 (footnote omitted).

### A)     Legal Standard

The Due Process Clause guarantees a criminal defendant the right to an impartial judge.  *In re Murchison*, 349 U.S. 133, 136 (1955).  A trial judge "must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the appearance of advocacy or partiality."  *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995).  However, to succeed on a judicial bias claim, a petitioner must overcome a presumption that judges are honest and trustworthy.  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if the remarks are critical, disapproving of or even hostile to counsel, the parties or their cases.  *Liketky v. United States*, 510 U.S. 540, 555 (1994).  It is generally appropriate for a trial judge to clarify testimony and assist the jury in understanding the evidence.  *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988).  It is also generally appropriate for a trial judge to participate in the examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of testimony.  *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004).  A trial judge's participation

1   oversteps the bounds of propriety and deprives the parties of a fair trial only when the record

2   discloses actual bias or leaves the reviewing court with an abiding impression that the judge's

3   remarks and questioning projected to the jury an appearance of advocacy or partiality.  *United*

4   *States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001).

5           A claim of judicial misconduct by a state judge in the context of federal habeas review

6   does not simply require that the federal court determine whether the state judge committed judicial

7   misconduct; rather, the question is whether the state judge's behavior "rendered the trial so

8   fundamentally unfair as to violate federal due process under the United States Constitution."

9   *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (trial judge properly posed questions to

10  prosecution witnesses to clarify evidence even though the questions may have permitted testimony

11  that was helpful to prosecution or detrimental to defense).

12          **B)        Analysis**

13          A federal court will not review questions of federal law decided by a state court if the

14  decision also rests on a state law ground that is independent of the federal question and adequate

15  to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in

16  which a state prisoner has defaulted his federal claims in state court pursuant to an independent

17  and adequate state procedural rule, federal habeas review of the claims is barred.  *See id.* at 750.

18  The rule cited here by the court of appeal, specifically, that a defendant must make a

19  contemporaneous objection at trial in order to preserve an issue on appeal, has been found to be a

20  sufficiently independent and adequate procedural rule to support the denial of a federal petition on

21  grounds of procedural default.  *See Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004)

22  (finding claim procedurally defaulted based on California's contemporaneous objection rules).

23  The claim is therefore procedurally defaulted.[4]

24          Although the court of appeal found that the judicial bias claim was procedurally waived, it

25  also found that the claim failed on the merits.  Based on a review of the record, and applying the

26  _____

27  [4] Although a petitioner may avoid procedural default by showing cause for the default and actual
    prejudice as a result of the alleged violation of federal law, or by showing the failure to consider

28  the claims will result in a fundamental miscarriage of justice, *see Coleman* 501 U.S. at 750,
    petitioner here has made no such showing or even an effort to do so.

United States District Court
Northern District of California

legal principles on judicial misconduct as outlined above to this claim, the Court finds that the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent and was not based on an unreasonable determination of the facts in light of the entire trial record.  The Court agrees with the state appellate court's finding that the record does not show actual bias by the judge or an appearance of advocacy or partiality by the judge.

Finally, even assuming error, the evidence of petitioner's guilt was so strong that any due process violation did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  As discussed by the state court, petitioner's defense was contradicted by DNA evidence, witness testimony, and petitioner's own admissions.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 4.      Insufficient Evidence

Petitioner was convicted of aggravated sexual assault of a child (counts 3-12), forcible oral copulation (count 13), and forcible rape (count 14).  Petitioner claims that his convictions on these counts must be reversed because there was insufficient evidence of duress.  Dkt. No. 34 at 54-56. The California Court of Appeal summarized and rejected petitioner's claim as follows:

> Appellant contends there was insufficient evidence of duress for his convictions on counts three through fourteen because appellant never threatened Doe to get her to agree to the sexual acts.  We disagree.
>
> In reviewing a claim of insufficiency of the evidence of duress, we determine whether, on the record as a whole, any rational trier of fact could find appellant guilty beyond a reasonable doubt.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87, citing *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence."  (*Ibid.*)
>
> The convictions for aggravated sexual assault of a child under section 269 reference section 288(a) for oral copulation and section 289 for sexual penetration.  These two sections require the sexual acts be committed "against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury."  (§§ 288, subd. (c)(2)(A), 289, subd. (B).)  Duress is defined as "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.  The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress."  (§ 261, subd. (b).)  Other pertinent factors include threats to harm the victim, physically controlling the victim, and warning the victim that revealing the molestation would jeopardize the family.  (*People v.*

*Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*).)  That an appellant does not use force or overt threats does not prevent a finding of duress because the victim's testimony should be considered in light of her age and relationship to the appellant.  (*Ibid.*)

Appellant claims duress is determined under an objective standard based on the appellant's wrongful act, not the victim's response to it.  (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*) [holding the victim's consent is not a defense to the crime of lewd acts on a child under age 14 under section 288 and has no effect when the lewd acts are committed by force, violence, duress, menace, or fear.)  The People argue that the objective test only applies to violations of section 288 and not to violations of section 269 as charged here, because section 269 contains the language against the victim's will allowing for the court to look at the victim's response.  We need not resolve this issue because, as detailed below, there was sufficient evidence appellant's actions created a "'direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce' " Doe to acquiesce to his sexual demands and that she did so out of "fear" and for her "safety."  (*Soto, supra*, at p. 246 [the jury could find duress without overt threats based on the "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct"].)

Appellant relies on *People v. Espinoza* and *People v. Hecker*, where two courts concluded fathers' molestations of their daughters were not accomplished by duress.  (*People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*); *People v. Hecker* (1990) 219 Cal.App.3d 1238 (*Hecker*).)  In *Espinoza*, defendant molested his daughter on multiple occasions.  The daughter was "'too scared to do anything'" and she was afraid defendant "'would do something'" if she reported what happened.  (*Espinoza, supra*, at p. 1293.) The court, relying on *Hecker*, held that the daughter's fear, without more, did not establish duress.  In *Hecker*, the court found no duress where a stepfather molested his 13-year-old stepdaughter and told her not to reveal the molestations because it would hurt his marriage and career.  (*Hecker, supra*, 219 Cal.App.3d at p. 1242.)  The victim admitted she was not afraid stepfather would harm her but she felt "'pressured psychologically.'"  (*Id.* at p. 1250.)  The *Hecker* court held that psychological coercion without more does not establish duress.  (*Id.* at pp. 1250-1251.)

This argument that "'[p]sychological coercion' without more does not establish duress" has been rejected by several courts.  In the context of a family member with a young victim the "very nature of duress is psychological coercion."  (*Cochran, supra*, 103 Cal.App.4th at p. 15; *People v. Senior* (1992) 3 Cal.App.4th 765, 775 ["duress involves psychological coercion"]; *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 238 (*Kneip*) [psychological coercion can amount to duress].)

This case is more akin to *Cochran*, where the court found sufficient evidence of duress where a father was convicted of forcible lewd conduct on his nine-year-old daughter.  (*Cochran, supra*, 103 Cal.App.4th at p. 12.)  The daughter testified she was not afraid of her father but her father told her not to tell anyone because he would get into trouble and go to jail.  (*Ibid.*)  The court noted that even though the defendant did not beat or punish her, he still coerced her into performing the various sex acts.  (*Id.* at p. 15.)  *Cochran* held the daughter was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority." (*Ibid.*)  Given the age and size difference between defendant and the victim, their father-daughter relationship, and the implicit threat that she would break up the family if she did not comply, there was sufficient evidence of duress.  (*Id.* at p. 16; see also *People v. Senior, supra*, 3 Cal.App.4th at p. 775 [finding duress where a father molested his 14-year-old daughter because the defendant was the victim's father and an authority figure to her; defendant threatened to hit her; and he told her that if she did not submit to the molestation that it could result in a divorce, thus jeopardizing the family unit].)

In *People v. Veale*, the court held there was sufficient evidence of duress where the

United States District Court
Northern District of California

United States District Court
Northern District of California

defendant molested his seven-year-old stepdaughter. *(People v. Veale* (2008) 160 Cal.App.4th 40 (*Veale*).) The stepdaughter testified that although defendant never threatened her, she was afraid to tell her mother because defendant might hurt her or do something to her mother. (*Id.* at pp. 44-45.) She stated the defendant did not threaten her or use physical force and that on one occasion, when defendant asked her to put her mouth on his penis, she got mad and threw clothes around the room. (*Id.* at p. 46.) The court found that although defendant never threatened the stepdaughter, numerous factors established duress: defendant was an authority figure in the home; the stepdaughter feared defendant might harm her or her mother; the stepdaughter's young age; and the difference in size between defendant and the stepdaughter. (*Id.* at p. 47.)

The factors identified in *Cochran* and *Veale* are present here. The abuse began when Doe was very young, only six years old, and continued until appellant was arrested when she was 16 years old. Appellant was Doe's father and an authority figure in the home. When Doe testified why she acquiesced to her father's abuse, she stated: "Because he was supposed to be my dad, and he told me to do it. If you don't do something your dad tells you to do, usually you get in trouble for it." She described her father as a disciplinarian and said that to discipline her, he would give her a time out, take something away, or spank her.

Appellant argues there was no evidence of any negative consequences when Doe refused to submit to her father's requests. But this does not disprove duress. (See *Veale, supra*, 160 Cal.App.4th at pp. 44-45.) Appellant exercised authority and power over Doe and could discipline her. (See *Kneip, supra*, 219 Cal.App.3d at p. 239 [where the defendant is a family member and the victim is young, "the position of dominance and authority of the defendant and his continuous exploitation of the victim" is relevant to establishing duress]; see also *Cochran, supra*, 103 Cal.App.4th at p. 15 [finding duress where the victim was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority"].) Doe testified she complied with his requests so she would not be disciplined and because she was "afraid."

There was a substantial age difference between Doe and her father. When the abuse began Doe was 6 and appellant was 41 years old. There was also a size difference. Doe was an "average" size child and appellant was 5′8″ tall and weighed approximately 150 to 160 pounds when Doe was a child. The age of the victim and her relationship to appellant are factors to be considered in appraising the existence of duress. (See *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 ["We note that at the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of his relative physical vulnerability."].)

Doe believed that disclosing the abuse would jeopardize her family. Like the victim in *Cochran*, Doe testified appellant told her it was their "little secret" and asked her to promise not to tell anyone. "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*People v. Senior, supra*, 3 Cal.App.4th at p. 775.) Doe testified if she told anyone, she would get in trouble. Doe's participation was motivated by "fear" and she described it as a "matter of safety." She was afraid to tell anyone because " I didn't know what [appellant] could have done." She said, "I was scared out of my mind that he would murder my mother if she found out. I was also worried he would beat me." Both Doe and her mother testified to appellant's angry and physical response when Doe began a sexual relationship with her boyfriend. Doe's mother testified that appellant "was really, really scary angry. I mean, I thought he was gonna hurt her." She testified that appellant was "hitting [Doe]." Doe testified that appellant expressed his anger by "rap[ing]" her.

The evidence amply supports a finding of duress. Doe was abused by her father, an

1

2

3

4

> authority figure in the home, beginning at the age of six.  When a victim is young and is molested by her father in the family home, "in all but the rarest cases duress will be present."  (*Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6.)  We conclude that given the father-daughter relationship, appellant's position of authority in the family, the difference in age and size between appellant and Doe, appellant's instruction to keep the abuse a secret, and Doe's testimony about her ongoing fear, there is sufficient evidence to support appellant's convictions on all counts.

5

*People v. McCarthy*, 2015 WL 1774398, at *8-11 (footnote omitted).

6

### A)       Standard

7

The Due Process Clause "protects the accused against conviction except upon proof

8

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

9

charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The Supreme Court has emphasized that

10

sufficiency of the evidence types of "claims face a high bar in federal habeas proceedings . . ."

11

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the Third Circuit

12

"unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of

13

*Jackson [v. Virginia*, 443 U.S. 307, 321 (1979)] when it engaged in "fine-grained factual parsing"

14

to find that the evidence was insufficient to support petitioner's conviction).  A federal court

15

reviewing collaterally a state court conviction does not determine whether it is satisfied that the

16

evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.

17

1992); *see, e.g., Coleman*, 132 S. Ct. at 2065 ("the only question under *Jackson* is whether [the

18

jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality").

19

The federal court "determines only whether, 'after viewing the evidence in the light most

20

favorable to the prosecution, any rational trier of fact could have found the essential elements of

21

the crime beyond a reasonable doubt.'"  *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at

22

319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,

23

has there been a due process violation.  *Jackson*, 443 U.S. at 324.

24

### B)       Analysis

25

Based on a review of the record, and applying the legal principles on sufficiency of the

26

evidence as outlined above to this claim, the Court finds that the state court's rejection of this

27

claim was not contrary to, or an unreasonable application of, clearly established Supreme Court

28

precedent and was not based on an unreasonable determination of the facts in light of the entire

United States District Court
Northern District of California

trial record.  The state appellate court reasonably found there was sufficient evidence to support

the finding of duress given the age and size difference between petitioner and Doe, their familial

relationship and petitioner's position as an authority figure, petitioner's instruction to keep the

abuse a secret, and Doe's testimony that she was scared of anyone finding out about the abuse.

Based on this evidence, it cannot be said that *no* rational trier of fact could have found petitioner

guilty of Counts 3-14 beyond a reasonable doubt.  *Jackson*, 443 U.S. at 324 (emphasis added).

Accordingly, petitioner is not entitled to habeas relief on this claim.

**5.     Sealed Records**

Petitioner requests that the Court independently review Jane Doe's Children's Hospital

medical records related to any therapy, counseling, or psychological to determine whether the trial

court erred in concluding that these records contained discoverable material.  Dkt. No. 34 at 57.

Petitioner argues that these records potentially contain material that challenge Jane Doe's

credibility.  The California Court of Appeal rejected petitioner's claim as follows:

> Appellant requests this court review the sealed records from Doe's therapy sessions to
> determine if the trial court ruled correctly there was no discoverable material that needed to
> be disclosed to the defense.
>
> Before trial, defense counsel subpoenaed Doe's records from her therapy sessions
> following the 2009 sexual assault by a stranger. The packet of psychiatric records was
> reviewed by a judge before the preliminary hearing. The prosecution requested the trial
> judge review the records to determine if there was any discoverable material. Defense
> counsel asked that the court disclose any impeaching or potentially exculpatory material
> under *Brady v. Maryland, supra*, 373 U.S. 83. The court reviewed the records in camera
> and stated: "there is nothing in the records I see as *Brady*" and nothing that would preclude
> defense counsel from asking Doe about whether she disclosed her father's abuse to her
> therapist. The court held a further hearing to determine if defense counsel could question
> Doe about whether she specifically told the psychotherapist about abuse by her father. The
> court reiterated its finding: "I don't find that the records are essential to the defendant's
> right to confrontation as it is now presented ... [¶] I am ruling that the records won't be
> disclosed."
>
> An appellate court's role is to review the confidential records that were not disclosed by
> the trial court "to determine whether they were material and should have been disclosed."
> (*People v. Martinez* (2009) 47 Cal.4th 399, 453.) We have reviewed Doe's sealed therapy
> records in camera and conclude the undisclosed information was not material to defense
> and the trial court did not err in denying disclosure.

*McCarthy*, 2015 WL 1774398, at *11.

This claim fails for multiple reasons.

First, a request for *in camera* review of state court discovery proceedings is not cognizable

on federal habeas review.  *Williams v. Malfi*, No. CV 06-4367-DOC JTL, 2008 WL 618895, at *9 (C.D. Cal. Jan. 25, 2008) (denying request that federal habeas court review personnel records to determine whether erred in deciding not to disclose these records); *Randolph v. Adams*, No. C 02-4196 JSW (PR), 2006 WL 2032542, at *25 (N.D. Cal. July 18, 2006) (denying request for *in camera* review of trial court discovery hearing as alleging an error under state evidentiary law). An alleged error in the interpretation or application of state law is not a ground for federal habeas relief.  *See Estelle*, 502 U.S. at 68.  Thus, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  *Jammal*, 926 F.2d at 919.

Second, to the extent petitioner is raising a *Brady* claim, this claim does not warrant federal habeas relief because petitioner has offered nothing but speculation that these records contained evidence favorable to his defense.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (granting a habeas corpus petition "on the basis of little more than speculation" is improper); *Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) ("[T]o state a *Brady* claim, [a petitioner] is required to do more than 'merely speculate' [about possible evidence].");  *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (rejecting Brady claim based on "mere suppositions" with "absolutely no evidence" that the allegedly withheld material, if it existed, "would have contained exculpatory evidence"); *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (petitioner's speculative arguments are insufficient to satisfy *Brady*).  Two different trial court judges and the state appellate court have reviewed these records and determined that these records do not contain any information that would be favorable to petitioner's defense.  Petitioner has provided no evidence that indicates that these determinations were inaccurate.

Third, to the extent that petitioner is arguing that the exclusion of these records violated his due process rights, the state court's denial of this claim was not an unreasonable application of clearly established Federal law.  The refusal to admit these records did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38.  The state appellate court independently reviewed the records filed under seal, and found no error by the trial court.  Petitioner's mere speculation that the disclosure of these records would have had an

1    effect on the jury's verdict is insufficient to establish actual prejudice under *Brecht*.  Even if these

2    records were relevant, due process does not guarantee a defendant the right to present all relevant

3    evidence.  *Egelhoff*, 518 U.S. at 42.

4         Based on the foregoing, the state court's denial of this claim was not contrary to, or an

5    unreasonable application of, clearly established federal law, and was not an unreasonable

6    determination of the facts in light of the evidence presented at the state court proceeding.  *See,*

7    *e.g., Strickler v. Greene*, 527 U.S. 263, 286 (1999) ("Mere speculation that some exculpatory

8    material may have been withheld is unlikely to establish good cause for a discovery request on

9    collateral review."); *Harrison v. Lockyer*, 316 F.3d 1063, 1065 (9th Cir. 2003) (application of state

10   rule that prevented petitioner from obtaining police officer's file did not violate due process where

11   petitioner made no showing that police officer's file contained complaints material to defense);

12   *Maine v. Sherman*, No. 1:17-cv-013-7-AWI-JLT (HC), 2018 WL 646127, at *23 (E.D. Cal. Jan.

13   31, 2018) (denying petitioner's claim requesting federal habeas court to conduct *in camera* review

14   of personnel records when trial court and state appellate court had reviewed records and found no

15   disclosable *Pitchess* material).  Habeas relief is denied on this claim.

16   **C.    Certificate of Appealability**

17        The federal rules governing habeas cases brought by state prisoners require a district court

18   that issues an order denying a habeas petition to either grant or deny therein a certificate of

19   appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

20        A judge shall grant a certificate of appealability "only if the applicant has made a

21   substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the

22   certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district

23   court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

24   is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district

25   court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

26   473, 484 (2000).

27        Here, petitioner has not made such a showing, and, accordingly, a certificate of

28   appealability will be denied.

1

## IV.  CONCLUSION

2      For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a

3  certificate of appealability is DENIED.

4      The Clerk shall enter judgment in favor of respondent and close the file.

5      **IT IS SO ORDERED.**

6  Dated:   7/13/2020

7

8  HAYWOOD S. GILLIAM, JR.
   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28